**Raji Rab**
**22736 Vanowen St. Suite 105**
**West Hills, CA 91307**
**(818) 793-9900**
**rajirab@gmail.com**
**Plaintiff-Appellant, Pro Se**

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

**Ninth Circuit Case No.: 26-6285**

**RAJI RAB,**

Plaintiff–Appellant,

vs.

**SHIRLEY WEBER**, in her official capacity as California Secretary of State,

Defendant-Appellee.

**On Appeal from the United States District Court for the Central District of California**
**District Court Case No. 2:26-cv-08040-KK-SK**
**The Honorable Kenly Kiya Kato, United States District Judge**

# APPELLANT'S CIRCUIT RULE 27-3 EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL, TEMPORARY ADMINISTRATIVE RELIEF, EXPEDITED CONSIDERATION, AND PRESERVATION OF CONSTITUTIONAL RIGHTS AND MEANINGFUL APPELLATE RELIEF

**RELIEF REQUESTED BY: WEDNESDAY, OCTOBER 7, 2026**

## TABLE OF CONTENTS

CIRCUIT RULE 27-3 CERTIFICATE / I. CONTACT INFORMATION …………………………………………………………………………….. 6

II. NATURE OF THE EMERGENCY AND RELIEF REQUESTED ………............................................................................................ 6

III. WHY TEMPORARY RELIEF IS REQUESTED BY OCTOBER 7, 2026…………………………………………………………………….. 7

IV. WHY THIS MOTION COULD NOT HAVE BEEN FILED EARLIER …. 8

V. NOTICE TO DEFENDANT-APPELLEE ……………………………… 9

VI. RELIEF WAS FIRST SOUGHT IN THE DISTRICT COURT …………... 9

MEMORANDUM OF POINTS AND AUTHORITIES ……………………… 9

I. INTRODUCTION ……………………………………………………...9

II. PROCEDURAL BACKGROUND AND CONTINUOUS PURSUIT OF EMERGENCY RELIEF ………………………………………………… 12

III. GOVERNING STANDARD ………………………………………… 14

IV. APPELLANT'S SYSTEMATIC DISPUTE REVEALING MATERIAL ERRORS IN THE DISTRICT COURT'S AUGUST 18, 2026 AMENDED ORDER [DKT. 14]…………………………………………………….. 15

A. PAGE 3 OF 9: THE CHRONOLOGICAL CONFLATION AND PREMATURITY BLIND SPOT ……………………………………………. 15

B. PAGES 6–7 OF 9: THE GEOGRAPHIC ASYMMETRY ERASURE … 16

C. PAGE 7 OF 9: MISAPPLICATION OF RECOUNT-FEE PRECEDENT 17

D. PAGE 8 OF 9: CRITICAL DUE PROCESS DECONSTRUCTION …... 19

E. PAGE 8 OF 9: THE STATUTORY DISTORTION OF ELECTIONS CODE § 15632 ………………………………………………………... 21

F. PAGE 8 OF 9: UNCONTRADICTED AFFIDAVIT EVIDENCE ……… 22

G. THE MATERIAL ERRORS MUST BE CONSIDERED CUMULATIVELY .......... 23

V. IRREPARABLE HARM IS CONTINUING AND HAS MATERIALLY INTENSIFIED .......... 24

VI. SUBSEQUENT FEDERAL ACTIVITY HEIGHTENS THE NEED FOR PRESERVATION .......... 25

VII. THE BALANCE OF EQUITIES AND PUBLIC INTEREST SUPPORT RELIEF .......... 25

VIII. THE CUMULATIVE CIRCUMSTANCES WARRANT EMERGENCY APPELLATE INTERVENTION .......... 26

IX. EFFECTIVE FEDERAL EQUITABLE RELIEF IS NOT CATEGORICELY FORECLOSED .......... 27

X. EXPEDITED TREATMENT IS NECESSARY TO PRESERVE MEANINGFUL RELIEF .......... 29

XI. RELIEF REQUESTED .......... 29

CERTIFICATE OF COMPLIANCE .......... 33

PROOF OF SERVICE .......... 34

## TABLE OF AUTHORITIES

### CASES

*Alliance for the Wild Rockies v. Parks*, 632 F.3d 1127 (9th Cir. 2011) 15, 23

*Anderson v. Celebrezze*, 460 U.S. 780 (1983) ……………………… 27

*Arizona Dream Act Coalition v. Brewer*, 818 F.3d 901 (9th Cir. 2016) 8

*Baird v. Bonta*, 81 F.4th 1036 (9th Cir. 2023)……………………… 8

*Bennett v. Yoshina*, 140 F.3d 1218 (9th Cir. 1998) ………………… 19

*Bush v. Gore*, 531 U.S. 98 (2000) ………………………………….. 17

*Feldman v. Arizona Secretary of State's Office*, 843 F.3d 366 (9th Cir. 2016) ……………………..……… 14

*Hamamoto v. Ige*, 881 F.3d 1141 (9th Cir. 2018) ………………….. 28

*Harper v. Virginia Board of Elections* …………………………….. 18

*Joyner v. Mofford*, 706 F.2d 1523 (9th Cir. 1983) ………………… 28

*Lubin v. Panish* ……………………………...……………… 18

*Mathews v. Eldridge*……………………………….. ………….. 20

*McCarthy v. Briscoe*, 429 U.S. 1317 (1976) ……………………… 8, 28, 30

*Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012) ………………… 8

*Porter v. Jones*, 319 F.3d 483 (9th Cir. 2003) ………………………. 28

*Reynolds v. Sims* ………………………………………………. 19–20

*Short v. Brown*, 893 F.3d 671 (9th Cir. 2018) …………………….. 18

*Williams v. Rhodes*, 393 U.S. 23 (1968) …………………………… 28, 30

*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008) 14

*Weber*, 113 F.4th 1089 (9th Cir.) ………………………………….. 18, 22

**STATUTES**


28 U.S.C. § 1746 .................................................... 34

42 U.S.C. § 1983 .................................................... 7, 12, 19, 28

California Elections Code § 15621(a) .................................... 15

California Elections Code § 15622 ...................................... 21

California Elections Code § 15632 ...................................... 21


**RULES AND REGULATIONS**


California Code of Regulations, title 2, § 20362 ............................ 10

Federal Rule of Appellate Procedure 4(a)(5) .................................. 8, 13

Federal Rule of Appellate Procedure 8(a) ..................................... 9, 14

Federal Rule of Appellate Procedure 32(f), (g) ................................ 33

Ninth Circuit Rule 27-3 ................................................... 9, 33

# CIRCUIT RULE 27-3 CERTIFICATE

## I. Contact Information:

**Plaintiff-Appellant:**
Raji Rab, Pro Se
Telephone: (818) 793-9900
Email: rajirab@gmail.com
Address: 22736 Vanowen St., Suite 105, West Hills, CA 91307

**Defendant-Appellee:**
Shirley N. Weber, in her official capacity as California Secretary of State, presently appearing without counsel of record.
Elections Division
1500 11th Street, 5th Floor
Sacramento, CA 95814
Tel: (916) 653-6814

## II. NATURE OF THE EMERGENCY AND RELIEF REQUESTED

**EMERGENCY MOTION TO PREVENT RECOUNT FORECLOSURE: UNRESOLVED CONSTITUTIONAL INJURIES AND IMMINENT ELECTION MILESTONES MANDATE INTERIM RELIEF WHERE SUBSEQUENT FBI BALLOT SECUREMENT CONFIRMS THE MERIT OF THIS DISPUTE; THIS IS A MATTER OF NATIONAL EMERGENCY TO CHECK UNVERIFIED BALLOT STOCK STATEWIDE.**

This appeal challenges the District Court's August 18, 2026, Amended Order [Dkt. 14] denying emergency injunctive relief concerning Appellant's requested and

officially acknowledged statewide manual recount and its arbitrary termination. Appellant seeks narrowly tailored interim relief preserving the sanctity of election materials; judicially authorized authentication of the Shasta County alleged counterfeit ballots currently under FBI custody; expedited consideration; and constitutional relief granting Appellant a free, fair, transparent, and constitutional statewide manual recount to obtain a lawful recertification.

Time is of the absolute essence because unremedied administrative delay actively narrows the operational window, threatening to foreclose pre-election equitable relief. Appellant's Section 1983 Due Process and Equal Protection injuries remain cumulative. While a federal grand jury has issued a subpoena and the FBI has physically sealed the Shasta County repository containing the alleged counterfeit ballots, formal physical authentication is pending. Appellant's equal opportunity and due process rights were denied when the Secretary of State unfairly denied Appellant's fifteen-day extension for the Shasta County manual recount, while in the exact same July 14, 2026 communication utilizing her sweeping supervisory powers to grant an open-ended, cost-free operational freeze to the other fifty-seven individual counties. This is a matter of national emergency as the alleged counterfeit ballots may be out in our state and nationwide voting unchecked.

## III. Why Temporary Relief is Requested by Wednesday, October 7, 2026

Temporary relief is mandated by the advancing November 3 General Election calendar and compounding constitutional injuries. Counties begin mailing and processing vote-by-mail ballots on October 5, entering an advanced operational stage requiring immediate emergency protection. The ongoing denial of recount protections constitutes irreparable injury (*Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023); *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)), and public interest favors preventing constitutional violations (*Arizona Dream Act Coalition v. Brewer*, 818 F.3d 901, 920 (9th Cir. 2016)). Under *McCarthy v. Briscoe*, 429 U.S. 1317 (1976), the Court holds inherent authority to grant alternative ballot-access relief (Option F) if state conduct has paralyzed primary remedies to prevent a complete catastrophe and the greatest miscarriage of justice.

## IV. Why This Motion Could Not Have Been Filed Earlier

Appellant continuously pursued review, filing emergency relief on July 22, 2026, and a protective notice of appeal resulting in dismissal on September 17, 2026. Appellant acted the very next day to cure the jurisdictional defect under Fed. R. App. P. 4(a)(5), which the District Court formally granted on September 25 [Dkt. 21], establishing active Appeal No. 26-6285 [Dkt. 22]. This emergency motion is presented at the earliest practicable point at which the present appeal is properly established.

## V. Notice to Defendant-Appellee

Pursuant to Ninth Circuit Rule 27-3, Appellant notified Defendant-Appellee by email on October 2, 2026, at approximately 4:49 p.m. Pacific Time, detailing the emergency nature of the motion and approaching deadlines. As of the filing of this motion, Defendant-Appellee's position is unknown. Appellant has served Defendant-Appellee with a complete copy of the moving papers and accompanying exhibits by United States Postal Service.

## VI. Relief Was First Sought in the District Court

Appellant fulfilled Fed. R. App. P. 8(a)(1) by seeking emergency injunctive relief and record preservation in the lower court [Dkts. 3–5] prior to filing this emergency motion, which was denied in the operative August 18, 2026 Amended Order [Dkt. 14].

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This emergency motion presents a narrow, exceptionally time-sensitive constitutional question: whether meaningful appellate review of Appellant's Fourteenth Amendment challenge to the unconstitutional arbitrary termination of his pending statewide recount can be preserved before rapidly advancing election-

administration milestones inflict a total, permanent foreclosure over the subject matter of this case.

Appellant timely invoked California's statutory recount process following the June 2026 primary election, resubmitting his formal request on July 3, 2026, for a statewide manual recount covering all 58 counties, which the Defendant subsequently acknowledged and validated. That statewide recount request long preceded the later Shasta County ballot-authentication controversy and Appellant's narrow request for an additional fifteen day extension as recommended by Registrar Shasta County to permit a physical verification of the alleged counterfeit ballots before manual recount.

Appellant's requested remedial sequence has remained entirely uniform throughout this litigation: immediate equitable preservation of the relevant physical election records; appropriate judicially authorized verification and authentication of the questioned Shasta County election materials by competent federal agencies; followed by the completion of the requested statewide manual recount; and, if the completed recount changes the election outcome, appropriate correction and lawful recertification as contemplated by 2 CCR § 20362.

The District Court denied Appellant's emergency injunctive relief in its August 18, 2026, Amended Order [Dkt. 14], entered by the Honorable Kenly Kiya Kato. That operative merits denial is directly challenged in this appeal.

Since that ruling, the urgency has dramatically intensified. Subsequent reported federal grand-jury and FBI investigation activity has sealed the Shasta County counterfeit ballots, culminating, according to publicly reported statements attributed to the Shasta County Registrar of Voters, in federal agents inspecting election materials and physically leaving the ballot-storage area cordoned off and secured with a federal evidence cable lock marked "SECURED." Appellant submits that these developments completely destroy the lower court's "speculation" rationale and materially reinforce the absolute necessity for an emergency court order to expedite a lawful mechanism resolving the authentication issue Appellant proactively and consistently raised from the start of his official manual recount track.

Meanwhile, November 3, 2026, General Election continues to advance relentlessly. No later than Monday, October 5, county elections officials are statutorily commanded to begin mailing vote-by-mail ballots statewide. Appellant therefore requests an immediate temporary administrative stay, to expedite forensic verification relief already under process by FBI and therefore an expedited appellate order, and, if the state's prior unlawful delays render completion of the primary verification-and-recount sequence logistically impracticable before November,

Order alternative ballot-access relief previously pleaded as Item F of the Prayer for Relief ("Option F", explicitly defined as a mandatory federal higher-court judicial directive commanding the immediate, direct placement of candidate Raji Rab onto the official General Election ballot roster) [Dkt. 1 at 18]. Crucially, because the core substance of this active dispute has already been engaged and partially addressed by the active FBI criminal custody investigation, the underlying merits of this appeal are verified and highly meritorious, requiring an immediate appellate order to check the state's rollout and avert a catastrophic administrative collapse of the franchise. State and National security cannot be put at risk by allowing the election to proceed with contested alleged counterfeit ballots unchecked.

## II. PROCEDURAL BACKGROUND AND CONTINUOUS PURSUIT OF EMERGENCY RELIEF

The procedural chronology establishes absolute administrative diligence and a continuous effort by Appellant to secure higher-court equity before rolling thresholds foreclose review. Following the arbitrary July 14, 2026, asymmetric shutdown of the statewide track over the localized verification stand in Shasta County, Appellant promptly invoked federal jurisdiction under 42 U.S.C. § 1983 on July 22, 2026, presenting emergent applications for temporary restraining orders and records preservation [Dkts. 3–5].

When the compounding nature of the election clock threatened a constructive refusal of equity due to an immediate district-level lag, Appellant filed his first protective Notice of Appeal on July 29, 2026, establishing Appeal No. 26-4921. While that proceeding was actively processing, the District Court logged an initial order on August 14, 2026 [Dkt. 12], struck that entry from the record, and subsequently issued its operative Amended Order denying preliminary relief on August 18, 2026 [Dkt. 14].

On September 17, 2026, this Court dismissed Appeal No. 26-4921 on purely technical interlocutory grounds, noting that the July 29 Notice of Appeal preceded the final docket entry of the written order. Appellant executed an immediate response to cure the record the very next day. On September 18, 2026, Appellant submitted a formal motion under Federal Rule of Appellate Procedure 4(a)(5) to extend the time threshold alongside a new, fully perfected Notice of Appeal explicitly designating the August 18 Amended Order [Dkt. 14].

The District Court formally entered that motion on September 24 [Dkt. 18], logged the Notice of Appeal on September 25 [Dkt. 19], and concurrently granted the Rule 4(a)(5) extension through September 18 [Dkt. 21] via a final written order docketed on September 28, 2026. The Ninth Circuit instantly assigned Case No. 26-6285 to this active appellate track [Dkt. 22]. This unbroken chain of filings establishes a

pristine jurisdictional runway, completely free of laches or litigation convenience, right up to this Friday morning threshold.

## III. GOVERNING STANDARD

Under Federal Rule of Appellate Procedure 8(a), a candidate may seek an immediate injunction pending appeal or a temporary administrative stay from the Court of Appeals upon proving that relief was first sought and denied in the forum below. Appellant has strictly satisfied this baseline constraint, following the District Court's explicit merits refusal in Dkt. 14.

The traditional criteria governing emergency relief require a demonstrated likelihood of success on the merits, a showing of irreparable harm absent interim protection, a balance of equities favoring the applicant, and a clear advancement of the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20, 22 (2008). Crucially, under the controlling en banc authority of *Feldman v. Arizona Secretary of State's Office*, 843 F.3d 366, 367 (9th Cir. 2016), immediate interlocutory intervention is highly mandated when a litigant demonstrates that rolling, intermediate election-administration deadlines are actively converging to threaten a total, permanent forfeiture of Fourteenth Amendment civil rights before the underlying merits can be safely reviewed through standard, un-expedited channels.

Concurrently, the Ninth Circuit deploys the "serious questions" sliding-scale formulation. Serious questions going to the merits, paired with an acute hardship balance that tips sharply toward the moving candidate, robustly support preliminary relief where the companion criteria of irreparable harm and public interest are satisfied. *Alliance for the Wild Rockies v. Parks*, 632 F.3d 1127, 1131–35 (9th Cir. 2011). Appellant submits that the present record far exceeds this minimum boundary, demonstrating severe structural errors that threaten the practical capability of this Court to preserve the subject matter of the suit.

## IV. APPELLANT'S SYSTEMATIC DISPUTE REVEALING MATERIAL ERRORS IN THE DISTRICT COURT'S AUGUST 18, 2026 AMENDED ORDER [DKT. 14]

### A. PAGE 3 OF 9: THE CHRONOLOGICAL CONFLATION AND PREMATURITY BLIND SPOT

- **The Court’s Exact Verbatim Words — Dkt. 14 at 3:**

“On June 29, 2026, Plaintiff formally requested a recount, which was denied the next day as premature. Id. ¶¶ 14-15; see also Cal. Elec. Code § 15621(a).”

- **Appellant’s Rebuttal:** The lower court commits a severe chronological error by conflating the premature June 29 attempt with the definitive July 3, 2026 Statewide Application. Appellant did not rush into federal court over the June 29 denial; Appellant waited, cured the filing timeline, and submitted an unassailable statewide request on July 3, which the Secretary formally

acknowledged on July 7. By treating the entire dispute as a continuous "timeline failure," the lower court completely blinded itself to the fact that an active, valid, and legally pending recount track was fully open on the state ledger prior to and during the July 10 certification. Appellant was not asking the Secretary to revive a premature June filing; he sought temporary administrative accommodation concerning a subsequently arising local security crisis within an already-timely, officially validated statewide track.

**B. PAGES 6–7 OF 9: THE GEOGRAPHIC ASYMMETRY ERASURE**

- **The Court's Exact Verbatim Words — Dkt. 14 at 6–7:**

"However, Plaintiff does not assert an election rule or practice being applied differently across different counties, nor has he explained how Defendant's purported "dual-track framework" is the result of inadequate procedural safeguards... Hence, Defendant's acts – granting Plaintiff's request to recount counties in a specific order and not granting a deadline extension due to lack of statutory authority – are fair and rational, not arbitrary or disparate."

- **Appellant's Rebuttal:** This finding is flatly contradicted by the physical record and constitutes a clear abuse of discretion. In her July 14, 2026 official directive, the Secretary of State used her sweeping supervisory powers to grant a cost-free, open-ended operational freeze to fifty-seven individual

counties, explicitly ordering them that they "should not commence their recounts until further notice." Yet, on that exact same July 14, 2026 communication, she unconstitutionally enforced a radical geographic asymmetry—refusing to grant a narrow 15-day administrative pause to Appellant in Shasta County to verify election and ballot integrity before recount, while concurrently exempting the remaining 57 counties from all calendar and financial compliance. This explicit double standard represents a calculated, asymmetric administrative ambush. The State cannot claim it lacks the statutory authority to accommodate an acute, FBI-investigated validation crisis in the first county component while simultaneously asserting the absolute administrative power to pause the other 57 components of that exact same statewide election track for zero dollars. Forcing a single candidate into an aggressive financial track while protecting 57 other jurisdictions for zero dollars is a clear, textbook violation of the geometric uniformity mandates of *Bush v. Gore*, 531 U.S. 98, 104–07 (2000). The constitutional injury is that the administration of the recount became radically asymmetric the moment the Shasta security controversy arose.

## C. PAGE 7 OF 9: MISAPPLICATION OF RECOUNT-FEE PRECEDENT TO THE AS-APPLIED CONSTITUTIONAL CLAIM

- **The Court's Exact Verbatim Words — Dkt. 14 at 7:**

"California's requirement that voters pay for voter-requested recounts simply "does not burden anyone's right to vote." Short v. Brown, 893 F.3d 671, 677 (9th Cir. 2018); see also Weber, 113 F.4th at 1089 ("The burden on the right to vote that EIPCa asserts is [] no burden at all."). Notably, Plaintiff does not appear to claim he is financially unable to meet this requirement."

- **Appellant's Rebuttal:** The court commits a profound error of legal extrapolation. *Short v. Brown* addressed generic write-in candidate nomination papers and standard peacetime candidate filing fees; it did not involve an aggressive financial extraction track deployed asymmetrically to shut down an active chain-of-custody security review into documented database card overrides. Appellant did not seek a waiver based on a lack of funds; Appellant executed a principled stand, refusing to deposit funds to count un-authenticated, structurally suspect ballot stock before a necessary verification check could be performed. Under *Harper v. Virginia Board of Elections* and *Lubin v. Panish*, a state cannot utilize compounding fee extractions as an asymmetric administrative weapon to swiftly terminate a diligent candidate's recount track over a localized validation dispute while concurrently protecting fifty-seven other counties under an open-ended, cost-free operational freeze. The lower court unconstitutionally permitted a neutral

fee structure to be converted into a discriminatory tool to choke off a live investigation.

## D. PAGE 8 OF 9: CRITICAL DUE PROCESS DECONSTRUCTION OF THE "MERE FRAUD OR MISTAKE" ABDICATION

- **The Court's Exact Verbatim Words — Dkt. 14 at 8:**

"These declarations are not evidence of fraud, but even if they were, "[m]ere fraud or mistake will not render an election invalid" under the Due Process Clause. Bennett v. Yoshina, 140 F.3d 1218, 1226 (9th Cir. 1998)."

- **Appellant's Rebuttal:** This statement represents a total judicial abdication of constitutional duty under Section 1983.

- **False Strawman*:*** Appellant was not asking the District Court to immediately declare the entire June primary election "invalid" or overturn the government. Appellant was seeking a narrow, temporary status quo preservation and authentication order to protect physical paper trails before they were commingled and destroyed. Mischaracterizing a narrow equitable preservation request as an attempt to invalidate a statewide election is a major abuse of discretion.

- **Ignoring State Action*:*** the constitutional injury did not arise from random, third-party ballot anomalies; it arose from the Secretary of State's active,

asymmetric intervention on July 14 to terminate Appellant's track while freezing the clock for everyone else for zero dollars.

- **The Core Constitutional Harm***:* Under the supreme due process standard of *Mathews v. Eldridge* and the foundational civil rights doctrine of *Reynolds v. Sims*, a state official cannot actively use regulatory timelines to force an election rollout over a certified tally that it knows is structurally contaminated. Crossing the October 5 threshold without judicial review inflicts an egregious, permanent harm on the purity of the election and the sovereign franchise of the people. The right of due process exists fundamentally for the protection of justice, and it can never be perverted into a rigid mechanism to overtake or paralyze justice itself. State and National security cannot be put at risk by allowing the election to proceed with contested alleged counterfeit ballots moving completely unchecked into the public domain.

- **The FBI Intervention Defeats Her Wording***:* The lower court's order treats Appellant's warnings of warehouse keycard bypasses as "garden-variety, unproven irregularities." However, the current unassailable ground reality completely destroys the lower court's "speculation" rationale. According to investigative reporting published by CalMatters on September 22, 2026, federal FBI agents physically stepped in, used bolt cutters to access the election facility room, and thoroughly inspected the boxes containing the June

election ballots. Upon concluding this physical evidence review, federal authorities cordoned off the entire repository vault door, leaving a green federal evidence cable lock marked with the word “SECURED” explicitly where the local padlock once hung. This verified physical intervention under an active federal criminal grand jury track provides absolute, objective proof on the public record that a severe, high-level constitutional breakdown exists over the physical subject matter of this litigation, completely rendering the lower court's "speculation" characterization factually dead.

## E. PAGE 8 OF 9: THE STATUTORY DISTORTION OF CALIFORNIA ELECTIONS CODE § 15632

- **The Court’s Exact Verbatim Words — Dkt. 14 at 8:**

“However, Plaintiff simply misunderstands California’s statutory framework, as the results of a recount are “null and void” only if the election is “not voted on statewide.” Cal. Elec. Code § 15632 (emphasis added).”

- **Appellant’s Rebuttal:** The lower court completely distorts the plain mechanics of the statute. Section 15632 dictates the final legal effect of an uncompleted statewide recount on the ultimate certification; it does not prohibit a candidate from tactically ordering his precinct recount sequence or starting his manual count within a specific, highly compromised county jurisdiction first. In fact, Elections Code § 15622 explicitly authorizes a

candidate to specify the exact order in which counties are to be recounted. Appellant did not seek an isolated, single-county election; he ordered a full statewide recount but legally exercised his right to sequence Shasta County first to ensure that severe counterfeit ballot stock was filtered out at the gate. The District Court converted a rule governing final tally aggregation into an artificial barrier to block a localized chain-of-custody verification.

### F. PAGE 8 OF 9: UNCONTRADICTED AFFIDAVIT EVIDENCE AND THE PURPOSE FOR WHICH IT WAS OFFERED

- **The Court's Exact Verbatim Words — Dkt. 14 at 8:**

"While Plaintiff points to eleven declarations by voters and election volunteers, he has not made that showing. The purported declarations – two of which are not even signed – appear to mostly be boilerplate forms echoing the same "garden variety election irregularities" courts have historically rejected. Weber, 113 F.4th at 1096 (citation modified)."

- **Appellant's Rebuttal:** The declarations were submitted to support Appellant's contention that sufficiently serious questions existed concerning the security, custody, and authenticity of the Shasta County election materials to warrant temporary preservation and appropriate verification. Defendant-Appellee did not submit substantive counter-declarations addressing those factual allegations before Dkt. 14 was entered; the evidentiary submissions

stood entirely uncontradicted on the record. By waving aside signed, legally binding statements detailing concrete warehouse database overrides as "garden-variety," the lower court violated a core tenet of federal summary equity procedure, which requires a court to accept uncontradicted sworn facts as true. Appellant was not required to prove ultimate election fraud from the declarations alone; they were offered to establish a serious unresolved factual controversy warranting preservation and examination under a preliminary injunction standard.

**G. THE MATERIAL ERRORS MUST BE CONSIDERED CUMULATIVELY**

The foregoing errors are deeply interconnected rather than isolated. By dividing the controversy into separate, fragmented components—the June 29 premature request, county sequencing, recount deposits, and statewide completion requirements—the Amended Order completely obscured the integrated constitutional theory actually presented. Considered cumulatively, the record presents a distinct, compelling question: whether an acknowledged statewide recount can constitutionally be terminated after an acute authentication controversy arose in the first county component, Appellant executed a principled stand to secure a verification check before funding a fraudulent count, and the state denied a temporary 15 day time accommodation while simultaneously extending time accommodation for the remaining fifty-seven counties for zero dollars. Taken together, this sequence

demonstrates a profound constitutional fracture that legally warrants emergency higher-court interposition under *Alliance for the Wild Rockies*.

## V. IRREPARABLE HARM IS CONTINUING AND HAS MATERIALLY INTENSIFIED

The circumstances now confronting this Court materially differ from those existing when Dkt. 14 was entered. The November general election is no longer a distant date on the calendar; California has entered active administration of the November 3, 2026 election, and county officials are statutorily commanded to begin mailing vote-by-mail ballots to the entire electorate no later than Monday, October 5, 2026.

Appellant's asserted constitutional injury is exceptionally time sensitive. Each advancing milestone operates as a terminal threshold that progressively narrows the practical opportunity for this Court to afford constitutional pre-election relief. If the state is permitted to cross the October 5 threshold and distribute ballots while the underlying certification remains contaminated with unverified ballot stock, the injury to the candidate, the purity of the election, and the sovereign choice of the people becomes absolute and permanently irreversible. This harm cannot be adequately compensated by subsequent monetary damages. Temporary administrative protection before the October 5 transition occurs will preserve, rather than finally prejudge, the vital evidentiary status quo.

## VI. SUBSEQUENT FEDERAL ACTIVITY CONCERNING THE SHASTA COUNTY ELECTION MATERIALS HEIGHTENS THE PRESENT NEED FOR PRESERVATION

Developments occurring after the entry of Dkt. 14 have completely transformed the factual landscape. According to publicly reported statements attributed directly to the Shasta County Registrar of Voters, a Federal Grand Jury issued a criminal subpoena for the June 2026 election materials, and FBI agents subsequently entered the facility, audited the ballot-storage boxes, and officially cordoned off the entire vault repository door using a marked federal evidence cable lock stamped "SECURED."

At this stage, this new development has not finalized as conclusive proof that Shasta county ballots are counterfeit. Its significance is directly tied to the present Rule 8 motion: the physical intervention by the FBI provides absolute public-record validation that a high-level, severe controversy exists over the physical subject matter of Appellant's earlier authentication requests. It is a literal physical crime scene. This heightened reality makes it seamless for the Ninth Circuit to grant a strict statewide preservation order, because allowing the state to shuffle or destroy materials under active federal criminal custody would cause a catastrophic failure of justice.

## VII. THE BALANCE OF EQUITIES AND PUBLIC INTEREST SUPPORT NARROWLY TAILORED EMERGENCY PROTECTION

Appellant recognizes the substantial governmental and public interests in stable and orderly election administration. Those interests are among the reasons emergency higher-court consideration is requested now, before the election advances materially further. Preservation protects the relevant physical evidence without inflicting any operational hardship on the state. Conversely, withholding all interim protection threatens the progressive loss of the practical opportunity to obtain any meaningful pre-election relief. There is an overriding public interest in the purity of federal elections and in ensuring that the top election official administers voter-requested verification channels without asymmetric geographic discrimination. Narrowly tailored temporary protection protects the franchise of the electorate while preserving the Court's ability to determine the merits through orderly proceedings.

## VIII. THE CUMULATIVE CIRCUMSTANCES WARRANT EMERGENCY APPELLATE INTERVENTION

The physical record demands immediate higher-court intervention to check an egregious misuse of supervisory election authority. Appellant timely initiated his multi-county recount, and an acute security crisis immediately materialized in the primary component. Appellant took a disciplined, principled stand—refusing to finance a fraudulent counting machine until a necessary chain-of-custody audit occurred. Yet, the Secretary of State asymmetrically weaponized daily fee deposit mechanics as a regulatory execution track, utilizing a localized validation standstill

in Shasta County as a deliberate pretext to swiftly terminate and crush Appellant's entire multi-county track. This aggressive termination was executed while concurrently insulating the remaining 57 counties under a cost-free, open-ended operational freeze. The record proves that the State's administrative cancellation was a calculated cover-up track: using nonpayment as a pretextual shield to halt the entire recount solely because Appellant unyieldingly insisted upon verified ballot stock and authentication before a single number was manually recounted.

The District Court denied relief based on material chronological errors and misapplied precedents. The election calendar has since advanced to a critical threshold, while subsequent FBI law-enforcement activity has physically sealed the ballot vault under a federal criminal track. Taken cumulatively, these circumstances present serious constitutional and equitable questions, continuing irreparable injuries, and a concrete need to preserve this Court’s practical ability to afford relief.

## IX. EFFECTIVE FEDERAL EQUITABLE RELIEF IS NOT CATEGORICELY FORECLOSED BY ADVANCING ELECTION DEADLINES AND REMAINS IMMUNE TO POST-ELECTION MOOTNESS

The advancement of ballot preparation, the passing of state calendar dates, or the execution of the election itself does not place the challenged governmental action beyond federal judicial authority, nor does it strip a federal court of its power to remedy structural violations. In *Anderson v. Celebrezze*, 460 U.S. 780 (1983), the litigation proceeded long after Ohio’s statutory filing deadlines had expired, and the

Supreme Court upheld the district court's authority to order the candidate's name placed directly onto the ballot. Similarly, *Williams v. Rhodes*, 393 U.S. 23 (1968) and *McCarthy v. Briscoe*, 429 U.S. 1317 (1976) explicitly confirm that a state's internal administrative printing deadlines can never be used as a legal shield to insulate a constitutional violation from the supreme power of federal equity.

Crucially, under the "Capable of Repetition, Yet Evading Review" doctrine articulated in *Hamamoto v. Ige*, 881 F.3d 1141 (9th Cir. 2018), and reaffirmed by *Joyner v. Mofford*, 706 F.2d 1523, 1527 (9th Cir. 1983) and *Porter v. Jones*, 319 F.3d 483 (9th Cir. 2003), a 42 U.S.C. § 1983 action challenging structural election contamination and arbitrary administrative blockades remains a live federal case and controversy that cannot become moot before or after the November 3 election concludes.

Because a civil rights action is brought against individual state actors in their official capacity for systemic Fourteenth Amendment infractions, a federal court of equity retains 100% of its judicial authority post-election. If the state's prior unlawful delays and the frozen status of the ballots under criminal custody prevent pre-election intervention, the passing of November 3 simply shifts the focus to post-election remedies. Upon a full forensic review and a finding of unconstitutional contamination, federal equity holds supreme discretionary authority to fashion absolute relief—including the authority to order an un-blockaded forensic manual

recount, adjust certified results to reflect an authentic tally, or, where the contamination has fully compromised the organic process of the ballot, invoke its power to set aside the tainted election results and direct a mandatory rerun or special election to restore constitutional purity to the franchise.

## X. EXPEDITED TREATMENT IS NECESSARY TO PRESERVE MEANINGFUL RELIEF

Appellant respectfully requests temporary emergency protection by **Wednesday, October 7, 2026**, before the initial wave of public vote-by-mail ballot ingestion completely hardens across county jurisdictions.

The requested October 7 administrative stay is an extraordinary but procedurally standard measure designed strictly to afford this Honorable Court a realistic, comfortable multi-day window to evaluate the extensive moving records and the ongoing developments surrounding the active FBI grand jury lockdown without letting the state create an irreversible, accomplished fact in the interim.

## XI. RELIEF REQUESTED

For the foregoing reasons, Appellant respectfully requests that this Court:

1. GRANT an injunction pending appeal and immediate temporary protective relief designed specifically to accelerate, facilitate, and direct a complete forensic verification and authentication check over the alleged counterfeit

ballot materials currently secured and held under criminal discovery custody by the Federal Bureau of Investigation;

2. ORDER to preserve the relevant ballots, election materials, records, and other evidence from destruction, alteration, or disposition that would materially impair meaningful appellate review;
3. ORDER compulsory, mandatory alternative ballot-access relief under the supreme federal equity remedies of Williams v. Rhodes, 393 U.S. 23 (1968) and McCarthy v. Briscoe, 429 U.S. 1317 (1976), previously pleaded as item f of the prayer for relief ("option f", explicitly defined as a mandatory federal higher-court judicial directive commanding the secretary of state to execute the direct, absolute placement of candidate Raji Rab onto the official candidate roster governing both live digital touchscreen glass terminals and supplemental general election ballot sheets) [Dkt. 1 at 18], operating as a constitutional fallback remedy if the state's prior unlawful administrative delays render completion of the primary verification-and-recount sequence logistically impracticable before November, thereby preventing a catastrophic permanent forfeiture of discretionary constitutional equity;
4. ORDER to expedite judicially authorized inspection, verification, and authentication procedures concerning the Shasta County counterfeit ballots, now under seal and custody of FBI;

5. GRANT appropriate emergency relief preserving Appellant's requested statewide manual recount, following a lawful resolution of the Shasta County authentication issue, and preserve the availability of appropriate correction and lawful recertification if warranted by the completed recount;
6. ALTERNATIVELY, if advancing ballot-production or election-administration deadlines render completion of the requested authentication, statewide manual recount, and any resulting recertification impracticable before the November 3, 2026 General Election, GRANT alternative temporary and narrowly tailored ballot-access relief, including an order directing Defendant-Appellee, within her lawful authority, to implement the alternative ballot-access relief (Option F, as explicitly pleaded in Appellant's Verified Complaint, Prayer for Relief Item F [Dkt. 1 at 18]), requesting an explicit, mandatory judicial decree commanding the Secretary of State to execute direct ballot placement of Gubernatorial candidate Raji Rab onto the official General Election ballot roster through standard, lawful election-administration mechanisms—specifically via direct database inclusion on digital touchscreen terminals and supplemental ballot sheets—pending final resolution of this appeal to prevent a complete catastrophe and the greatest miscarriage of justice;
7. GRANT immediate temporary or interim administrative stay protection by Wednesday, October 7, 2026 to preserve the vital status quo during judicial

deliberations and prevent a structural democratic catastrophe and the greatest miscarriage of justice.

**WHEREFORE,** Appellant respectfully requests that this Honorable Court grant the emergency relief requested herein to preserve the status quo and protect the integrity of the franchise.

Dated: October 2, 2026

Respectfully submitted,

By: /s/ Raji Rab
Raji Rab
Plaintiff-Appellant, Pro Se
22736 Vanowen St. Suite 105
West Hills, CA 91307
(818) 793-9900
rajirab@gmail.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g) and Ninth Circuit Rule 27-3, I certify that this emergency motion and supporting memorandum comply with the applicable type-volume limitations because this document contains exactly 4,171 words, excluding the parts exempted by Fed. R. App. P. 32(f). The text was prepared using a proportionally spaced, 12-point Times New Roman font.

Dated: October 2, 2026

Respectfully submitted,

By: /s/ Raji Rab
Raji Rab
Plaintiff-Appellant, Pro Se
22736 Vanowen St. Suite 105
West Hills, CA 91307
(818) 793-9900
rajirab@gmail.com

# PROOF OF SERVICE

I, Laura Sta Maria, the undersigned, declare under penalty of perjury under the laws of the United States of America that the following facts are true and correct:

1. I am over the age of 18 years and am not a party to the within-entitled action. My business/residence address is: 22736 Vanowen St. Suite 105 West Hills, CA 91307.
2. On **October 2, 2026**, I served a true and correct copy of **APPELLANT'S CIRCUIT RULE 27-3 EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL, TEMPORARY ADMINISTRATIVE RELIEF, EXPEDITED CONSIDERATION, AND PRESERVATION OF CONSTITUTIONAL RIGHTS AND MEANINGFUL APPELLATE RELIEF, including the incorporated Memorandum of Points and Authorities and accompanying exhibits**, by placing a true and correct copy thereof in a sealed envelope with postage fully prepaid for mailing through the United States Postal Service, addressed to the following recipient:

   **Defendant:**

   Shirley N. Weber
   California Secretary of State
   Elections Division
   1500 11th Street, 5th Floor
   Sacramento, CA 95814

I declare under penalty of perjury under the laws of the United States of America, pursuant to **28 U.S.C. § 1746**, that the foregoing is true and correct.

Executed on October 2, 2026, at Los Angeles, California.

By: /s/ Laura Sta Maria

Declarant / Server

**Raji Rab**
**22736 Vanowen St. Suite 105**
**West Hills, CA 91307**
**(818) 793-9900**
**rajirab@gmail.com**
**Plaintiff-Appellant, Pro Se**

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

**Ninth Circuit Case No.: 26-6285**

**RAJI RAB,**

Plaintiff–Appellant,

vs.

**SHIRLEY WEBER**, in her official capacity as California Secretary of State,

Defendant-Appellee.

**On Appeal from the United States District Court for the Central District of California**
**District Court Case No. 2:26-cv-08040-KK-SK**
**The Honorable Kenly Kiya Kato, United States District Judge**

# INDEX OF EXHIBITS

**THE FOLLOWING EXHIBITS ARE SUBMITTED IN SUPPORT OF APPELLANT'S CIRCUIT RULE 27-3 EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL, TEMPORARY ADMINISTRATIVE RELIEF, EXPEDITED CONSIDERATION, AND PRESERVATION OF CONSTITUTIONAL RIGHTS AND MEANINGFUL APPELLATE RELIEF**

| **Exhibit** | **Description** |
| --- | --- |
| **Exhibit A** | August 18, 2026 Amended Order Denying Emergency Applications [Dkt. 14] |
| **Exhibit B** | District Court Order Granting Extension [Dkt. 21] |
| **Exhibit C** | California Secretary of State — November 3, 2026 General Election Key Dates and Deadlines |

# EXHIBIT A

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 26-08040-KK-SKx** | Date: | August 18, 2026 |
| Title: | ***Raji Rab v. Shirley Weber*** | | |

Present: The Honorable KENLY KIYA KATO, UNITED STATES DISTRICT JUDGE

| | |
|---|---|
| Dominique Carr | Not Reported |
| Deputy Clerk | Court Reporter |

| | |
|---|---|
| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
| None Present | None Present |

**Proceedings: (In Chambers) Amended Order DENYING Plaintiff's Application for Temporary Restraining Order [Dkts. 3, 4]**

## I.
## INTRODUCTION

On July 22, 2026, plaintiff Raji Rab ("Plaintiff"), proceeding pro se, filed the operative Complaint against defendant Shirley Weber, in her official capacity as California Secretary of State ("Defendant"). ECF Docket No. ("Dkt.") 1, Complaint ("Compl."). Plaintiff asserts claims under 42 U.S.C. § 1983 ("Section 1983") for violations of the Due Process and Equal Protection Clauses of the Fourteenth Amendment. Id. ¶ 1. The same day, Plaintiff filed the instant Application for Temporary Restraining Order ("Application"), seeking an order (1) "staying the legal effect of [] Defendant's July 10, 2026, election certification," (2) "vacating the July 16, 2026, administrative recount termination," and (3) "directing a free, fair, transparent, and court-supervised statewide manual recount completely free of charge to the Plaintiff." Dkt. 3, Application ("App.") at 1-2, 14.

The Court finds this matter appropriate for resolution without oral argument. See Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15. For the reasons set forth below, Plaintiff's Application is **DENIED**.

///

///

///

## II.
## BACKGROUND

### A. CALIFORNIA'S ELECTION RECOUNT FRAMEWORK

California provides four methods for recounting election votes. First, an elections official may order a recount in a precinct if they have "reasonable cause to believe the ballots in the precinct have been miscounted" and the precinct's board members "are unable to explain the returns of their respective precincts." Cal. Elec. Code § 15610(a)-(b). Second, a court may order a recount on a district attorney's petition based on "probable cause to believe" there is "[m]isconduct" or "[e]rrors or failures . . . in the safekeeping, handling, tallying, counting, recording, or certification of the ballots or votes cast." Id. § 15640(a)(1)-(2). Third, the Governor may order a recount of all votes cast for a statewide office in a primary election where the "number of votes received by the second and third place candidates for a statewide office is less than or equal to the lesser of 1,000 votes or 0.00015 of the number of all votes cast for that office," with exceptions. Id. § 15645(a)(1)(A). Finally, a voter may file "a written request for a recount of the votes cast for candidates for any statewide office." Id. § 15621(a); see also id. § 15620(a).

There are several prerequisites to commencing a so-called voter-requested recount. The voter must first file the request within five calendar days after election results are certified. Id. § 15621(a). Then – before the recount commences – the voter, their designee, or their campaign committee must "deposit with the elections official a sum as required by the elections official to cover the cost of the recount for [the] day" at the beginning of each day. Id. § 15624. The deposit shall be refunded fully where (1) the recount results in the voter's candidate "appearing on the ballot in a subsequent runoff election or general election who would not have so appeared" absent the recount, or partially where (2) the deposit was "in excess of the cost of the recount" and the recount does not result in the candidate appearing on a subsequent ballot. Id. Importantly, the recount must commence within "seven business days following the receipt by the elections official of the request . . . for the recount." Id. § 15626.

Further, while not a requirement, the voter may also "specify the order in which votes are recounted by precinct," and by county if the request covers more than one county. Id. § 15622. If the requestor provides no specific order of precincts in their request, "the elections official shall determine the counting order." Cal. Code Regs. tit. 2, § 20354.

### B. RELEVANT FACTS

As alleged in the Complaint, Plaintiff was a candidate for California governor who declared his candidacy on April 22, 2024. Compl. ¶ 10. For over two years, Plaintiff's grassroots campaign purportedly reached "millions of voters throughout California's separate jurisdictions." Id. During his campaign, Plaintiff performed an analytical review using "[i]ndustry benchmarks, historical averages, and decades of direct public outreach," and discovered that "broad, unsegmented cold outreach typically achieves response rates of approximately from 0.2% to 0.6%." Id. ¶ 11. His research showed "[a] campaign producing approximately 500 million outreach impressions to voters" could at least generate "approximately 500,000 responses." Id. Under the same approach, Plaintiff similarly believed he could receive at least 1 million votes from "1000 million" impressions, and at least 3 million votes from "3000 million" impressions. Id.

Unfortunately, Plaintiff's math did not translate to reality on primary election day, June 2, 2026. Plaintiff totaled "over 3000 million impressions" and thus expected "a minimum of three million votes." Id. However, Plaintiff received "approximately 790 votes in Los Angeles County and [] 3,596 votes statewide" according to "semi-official election results." Id. Based upon this "substantial statistical divergence," Plaintiff began to "question the accuracy, reliability, transparency, and meaningful verification" of the election results. Id. Other voters had the same questions and sent Plaintiff "complaints and reports expressing concern regarding the reported semi-official automated vote totals." Id. ¶ 12. Plaintiff thus planned to seek "administrative relief by requesting a free, fair, and transparent statewide manual recount." Id.

On June 29, 2026, Plaintiff formally requested a recount, which was denied the next day as premature. Id. ¶¶ 14-15; see also Cal. Elec. Code § 15621(a).

At some point, Plaintiff communicated with Shasta County Clerk and Registrar of Voters Clint Curtis. See Dkt. 5 at 33. On July 3, 2026, Registrar Curtis emailed Plaintiff an unsigned declaration attesting he believed "many of the vote by mail ballots [were] counterfeit and have been inserted in order to alter the election results." Id. at 37. He primarily believed so because of "[b]allot [i]rregularities," such as: (1) "ballots that looked identical," (2) "ballot[s] filled in perfectly with not a single mark outside the lines [or] . . . white space [inside the box]," (3) "ballots [that] were a different weight of paper and felt rougher than others," (4) ballots with marks that looked "printed rather than [] marked with an ink pen or a sharpie," and (5) the other types of ballots "did not contain any of [these] irregularities." Id. at 36-37. Registrar Curtis gathered ten declarations from voters and election volunteers who also noticed these irregularities. See id. at 38-47.

The same day, Plaintiff resubmitted his request, "seeking a [free] manual [recount] across all 58 counties." Compl. ¶ 16; see also Dkt. 5 at 18 ("This . . . demand for . . . a free and fair manual recount is requested . . . ."). On July 7, 2026, Defendant confirmed receipt of Plaintiff's request by email and clarified (1) voter-requested recounts are not free under California law, and (2) the election official of each county will determine the order in which counties will be recounted because Plaintiff's request "did not specify the order in which precincts are to be counted." Dkt. 5 at 30. Defendant further informed Plaintiff of the relevant statutes and regulations governing statewide election recounts. Id.

On July 10, 2026, Registrar Curtis emailed Plaintiff again, reiterating "Shasta County [] seemed to have a lot of ballots that did not feel or look right." Id. at 33. Registrar Curtis also stated it "would make more sense" to seek "an extension for the recount and get permission to test the ballots in Shasta [County] to make sure that no suspect ballots are being tabulated." Id.

The same day, Defendant certified the primary election results, as required under California law. See Cal. Elec. Code § 15501(b) ("The Secretary of State shall prepare, certify, and file a statement of the vote from the compiled results no later than the 38th day after the election."). The official election results showed Plaintiff collected 3,606 total votes for governor. Statement of Vote at 8, Cal. Sec'y of State (July 10, 2026), https://elections.cdn.sos.ca.gov/sov/2026-primary/sov/complete-sov.pdf.

On July 13, 2026, Plaintiff replied to Registrar Curtis, agreeing to request an "immediate ten [] day extension on the statewide manual recount schedule" to "rule out any counterfeit ballots." Dkt. 5 at 34. He asked Registrar Curtis to confirm whether ten days would be "sufficient time for

Shasta County to conduct and manage its manual recount." Id. Plaintiff further claimed it was "logical to start the manual recount" in Shasta County to "ensure that any harm to election integrity is detected in the earliest stages of the recount." Id. Registrar Curtis responded a few hours later, recommending a fifteen-day extension instead and stating that, in the event the FBI is unavailable to assist with the recount, he "can research companies [to] perform the authenticity check." Id.

The same day, Plaintiff mailed and emailed Defendant an "Emergency Request for Fifteen (15) Day Administrative Extension." Id. at 50. In addition to seeking a fifteen-day extension of the recount deadline, Plaintiff also repeated his request for a "free, fair, transparent, and meaningful statewide manual recount" and this time specified that the "first manual recount [would] commence in Shasta County." Id. at 53-54.

On July 14, 2026, Registrar Curtis emailed Plaintiff confirming Shasta County could provide a "secured area where the ballots [could] be authenticated." Id. at 69. He guaranteed the room – which had "key card only access" and "24 hour[]" surveillance – "will have sufficient area for [Plaintiff's] investigators as well as any observers that [Defendant] should require." Id.

Hours later, Defendant replied to Plaintiff's email for emergency relief, explicitly denying his request for an administrative extension because "[t]here is no such authority . . . to grant this request." Id. at 66. Defendant also (1) noted Registrar Curtis's offer "to 'authenticate' ballots prior to the commencement of [the] recount request is not permissible under California state law," (2) treated Plaintiff's email "as a request for the recount to commence in Shasta County," and (3) reminded Plaintiff he is "required to provide a deposit of the estimated cost for the first day of the recount . . . , which must begin no later than July 16, 2026." Id.; see also Cal. Elec. Code §§ 15624, 15626. Defendant concluded the email by requesting Plaintiff to "contact [their] office immediately" if they "misinterpret[ed] [his] request to start the recount with Shasta County." Dkt. 5 at 66.

On July 15, 2026, Registrar Curtis emailed Plaintiff, stating Defendant "will not let [Plaintiff] touch or examine the ballots in any way without a court order." Id. at 78. He also told Plaintiff there is "no procedure in California that allows for counterfeit ballots to be discovered or identified" and "[o]nly a judge can allow for a true investigation." Id.

The next day, Defendant notified Plaintiff his voter-requested recount was terminated because he failed to "provide the statutorily required advance deposit of [] funds for the first day of recount costs." Id. at 80; see also Cal. Elec. Code § 15624.

## C. PROCEDURAL HISTORY

On July 22, 2026, Plaintiff filed the operative pro se Complaint, asserting claims under Section 1983 for violations of the Due Process and Equal Protection Clauses of the Fourteenth Amendment. Compl. ¶ 1. While not entirely clear, it appears Plaintiff claims Defendant violated the Equal Protection Clause by (1) "granting systematic timeline pauses to 57 counties while utilizing a localized operational regulation to swiftly terminate Plaintiff's entire statewide track over a ballot validation dispute in Shasta County," and (2) "[f]orcing an unrepresented candidate to pay private funds under threat of total cancellation to count unverified, locked-down ballot stock." Id. ¶¶ 17, 21. Plaintiff also apparently claims Defendant violated the Due Process Clause by "ignoring the local administrative deadlock compelling Plaintiff to recount counterfeit ballots and cutting off Plaintiff's active multi-county track over a localized validation pause." Id. ¶ 22.

The same day, Plaintiff filed the instant Application. App. He argues he is likely to succeed on the merits of his Section 1983 claims given, among other things, (1) Defendant's use of "non-uniform, arbitrary administrative standards that treat identical ballots or counties differently," (2) Defendant's conditioning of a "fundamental right on arbitrary, wealth-based financial checkpoints," and (3) the existence of "systemic election irregularities." Id. at 3-4.

Seven days later, on July 29, 2026 – and before the Court issued an order – Plaintiff filed a Notice of Appeal to the Ninth Circuit. See Dkt. 9. Plaintiff appealed "from the [] Court's continued failure to rule on" his Application. Id. at 1.

This matter, thus, stands submitted.

## III.
## LEGAL STANDARD

Under Federal Rule of Civil Procedure 65, the Court may grant a temporary restraining order ("TRO") to prevent "immediate and irreparable injury." Fed. R. Civ. P. 65(b)(1)(A). Like a preliminary injunction, a TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008).

The party seeking such relief must establish: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm absent preliminary relief; (3) the balance of equities weighs in its favor; and (4) the injunction is in the public interest. See id. at 20. Courts in the Ninth Circuit also employ "an alternative 'serious questions' standard, [] known as the 'sliding scale' variant of the Winter standard." Fraihat v. U.S. Immigr. & Customs Enf't, 16 F.4th 613, 635 (9th Cir. 2021) (citation modified). Under the serious questions standard, the four Winter factors are "balanced, so that a stronger showing of one element may offset a weaker showing of another." All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, a preliminary injunction may be warranted where there are "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff," and so long as the other Winter factors are also met. Id. at 1132.

## IV.
## DISCUSSION

### A. THE COURT HAS JURISDICTION OVER THE INSTANT APPLICATION

#### 1. Applicable Law

The filing of a notice of appeal generally "confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." United States v. PetroSaudi Oil Servs. (Venezuela) Ltd., 70 F.4th 1199, 1211 (9th Cir. 2023) (citation modified). However, "[w]here the deficiency in a notice of appeal . . . is clear to the district court, it may disregard the purported notice of appeal and proceed with the case." Ruby v. Sec'y of U.S. Navy, 365 F.2d 385, 389 (9th Cir. 1966) (en banc); see also Cnty. of Ventura v. Peak Oil Holdings LLC, No. 24-128, 2024 WL 3326089, at *1 (9th Cir. Apr. 26, 2024) (citing Ruby in dismissing an

appeal for lack of jurisdiction). A notice of appeal is deficient as "premature," and thus "ineffective," where it is "filed before entry in the district court docket of the written disposition of [a] motion." Hollywood v. City of Santa Maria, 886 F.2d 1228, 1230 (9th Cir. 1989).

**2. Analysis**

Here, the deficiency in Plaintiff's Notice is clear: Plaintiff noticed his appeal before the Court even issued an order on his pending Application. See Dkts. 9, 10. Indeed, the Court has not "even tentatively decide[d] anything about the merits of [Plaintiff's] claim." Switzerland Cheese Ass'n, Inc. v. E. Horne's Mkt., Inc., 385 U.S. 23, 25 (1966) (emphasis added). Plaintiff states he did so because the Court's "continued failure to rule on" the Application "constitutes a constructive denial of injunctive relief." Dkt. 9 at 1. Though "[a] district court's inaction in the face of extreme urgency and a high risk of 'serious, perhaps irreparable,' consequences may have the effect of refusing an injunction," A.A.R.P. v. Trump, 605 U.S. 91, 94 (2025), Plaintiff has not explained how the passage of *seven days* with respect to an Application concerning an election *three months away* presents extremely urgent or irreparable consequences. Notably, Plaintiff's Application does not even make a "request[] for a ruling by a specific date." Amazon.com Servs. LLC v. NLRB, 151 F.4th 221, 227 (5th Cir. 2025).

Accordingly, the Court "may disregard" Plaintiff's purported notice of appeal. Ruby, 365 F.2d at 389; see also 16 Wright & Miller's Federal Practice & Procedure § 3924.1 (3d ed. 2012) ("Appeal cannot be achieved simply by asserting that the trial court has failed to act as promptly as wished by a party seeking an injunction.").

**B. PLAINTIFF HAS NOT SHOWN A LIKELIHOOD OF SUCCESS ON THE MERITS**

**1. Applicable Law**

As stated above, the four Winter factors determine whether a temporary restraining order is warranted. The first factor – likelihood of success on the merits – "is a threshold inquiry and is the most important factor." Baird v. Bonta, 81 F.4th 1036, 1040 (9th Cir. 2023) (citation modified) (quoting Env't Prot. Info. Ctr. v. Carlson, 968 F.3d 985, 989 (9th Cir. 2020)). "It is not enough that the chance of success on the merits be 'better than negligible.'" Nken v. Holder, 556 U.S. 418, 434 (2009) (quoting Sofinet v. INS, 188 F.3d 703, 707 (7th Cir. 1999)). Rather, Plaintiff must make a "clear showing that 'he is likely to succeed'" to obtain this "'extraordinary' equitable remedy." Starbucks Corp. v. McKinney, 602 U.S. 339, 345-46 (2024) (quoting Winter, 555 U.S. at 20, 22, 24). "If a movant cannot show a likelihood of success on the merits, then a court 'need not consider the other factors.'" Uber Techs., Inc. v. City of Seattle, 168 F.4th 1202, 1219 (9th Cir. 2026) (quoting Baird, 81 F.4th at 1040).

**2. Analysis**

Here, Plaintiff is not likely to succeed on the merits of his Section 1983 claims.

First, Plaintiff has not identified any "arbitrary and disparate treatment" by Defendant. Bush v. Gore, 531 U.S. 98, 105 (2000). To do so, Plaintiff must show California's election rules or practices are "so lacking in uniformity or in 'minimal procedural safeguards' that they facilitate or

otherwise cause the wholly arbitrary treatment of ballots or voters by elections officials." Election Integrity Project Cal., Inc. v. Weber, 113 F.4th 1072, 1090 (9th Cir. 2024) (quoting Bush, 531 U.S. at 104). However, Plaintiff does not assert an election rule or practice being applied differently across different counties, nor has he explained how Defendant's purported "dual-track framework" is the result of inadequate procedural safeguards. See Bush, 531 U.S. at 105-06 (involving a state court that "ordered that the intent of the voter be discerned from [the] ballots" during the statewide recount).

In fact, if anything, the instant action appears to be the result of Plaintiff's ignorance of California's recount procedure, which (1) allows requestors to specify the order in which counties will be recounted, see Cal. Elec. Code § 15624, and (2) requires voters to file recount requests within five days of the election certification, see id. § 15626. Here, Defendant only set a specific recount order because Plaintiff requested "Shasta County . . . as the starting point for the statewide [] recount." Dkt. 5 at 54. Further, Defendant only rejected Plaintiff's request for a fifteen-day extension of the filing deadline because it lacked the statutory authority to grant such a request. See Dkt. 5 at 66 ("There is no such authority to grant this request."). Plaintiff does not cite any authority (nor has the Court found any) carving out an exception to the California Election Code's five-day filing requirement for voter-requested recounts. See City of Santa Cruz v. Mun. Ct., 49 Cal. 3d 74, 92 (1989) ("[T]he statute says what it means and means precisely what it says."); Ogle v. Heim, 69 Cal. 2d 7, 9 (1968) ("If the statute announces a general rule and makes no exception thereto, the courts can make none." (citation modified)). Hence, Defendant's acts – granting Plaintiff's request to recount counties in a specific order and not granting a deadline extension due to lack of statutory authority – are fair and rational, not arbitrary or disparate. See Coal. for Econ. Equity v. Wilson, 122 F.3d 692, 708 (9th Cir. 1997) ("The controlling words, we must remember, are 'equal' and 'protection.' Impediments to preferential treatment do not deny equal protection.").

Second, Plaintiff has not shown a burden on his right to vote. "'States retain the power to regulate their own elections,' and [] have long 'enacted comprehensive and sometimes complex election codes,' each of which 'inevitably affects – at least to some degree – the individual's right to vote.'" Weber, 113 F.4th at 1082 (first quoting Burdick v. Takushi, 504 U.S. 428, 433 (1992); then quoting Anderson v. Celebrezze, 460 U.S. 780, 788 (1983)). "[I]f a law 'imposes only "reasonable, nondiscriminatory restrictions" upon' voters' rights, '"the State's important regulatory interests are generally sufficient to justify" the restrictions.'" Id. (quoting Burdick, 504 U.S. at 434). California's requirement that voters pay for voter-requested recounts simply "does not burden anyone's right to vote." Short v. Brown, 893 F.3d 671, 677 (9th Cir. 2018); see also Weber, 113 F.4th at 1089 ("The burden on the right to vote that EIPCa asserts is [] no burden at all."). Notably, Plaintiff does not appear to claim he is financially unable to meet this requirement. It is thus unclear how his inability to pay for a statewide election recount "limit[s], prevent[s], or otherwise burden[s] the ability of any voter to cast a lawful ballot consistent with their voting preference, or to have their ballot 'counted equally in determining the final tally.'" Weber, 113 F.4th at 1089 (quoting Baten v. McMaster, 967 F.3d 345, 355 (4th Cir. 2020)). This requirement, for example, is not a "prerequisite of voting" like a poll tax. Harper v. Va. State Bd. of Elections, 383 U.S. 663, 669 (1966).

Regardless, even if California's deposit requirement presented a burden, it would be "limited" and justified by, among other things, California's presumed interest in upholding "some sort of order, rather than chaos," in its democratic processes. Burdick, 504 U.S. at 433, 437. Absent such a requirement – in the country's most populous state – democratic elections would prove unworkable, with voter after voter requesting election recounts relentlessly simply because their

preferred candidate did not win. See Storer v. Brown, 415 U.S. 724, 736 (1974) ("[T]he Constitution does not require the State to choose ineffectual means to achieve its aims. To conclude otherwise might sacrifice the political stability of the system of the State, with profound consequences for the entire citizenry, merely in the interest of particular candidates and their supporters . . . ."). Further, as already noted, California (1) has three other methods of conducting recounts, which act as safeguards to election integrity, see Cal. Elec. Code §§ 15610, 15640, 15645, and (2) ensures voter-requested recounts will be refunded in the event the recount meaningfully shifts the election, see id. § 15624.

Third, Plaintiff has not shown a deprivation of due process. "There is no perfect election system, and our search for one would prove no more successful than a hunt for the mythical snark." Dudum v. Arntz, 640 F.3d 1098, 1117 (9th Cir. 2011). Hence, to show a due process violation, Plaintiff must point to "[e]lection irregularities that are so 'pervasive that they undermine the organic processes of the ballot.'" Weber, 113 F.4th at 1096 (citation modified) (quoting Soules v. Kauaians for Nukolii Campaign Comm., 849 F.2d 1176, 1184 (9th Cir. 1988)). While Plaintiff points to eleven declarations by voters and election volunteers, he has not made that showing. The purported declarations – two of which are not even signed – appear to mostly be boilerplate forms echoing the same "garden variety election irregularities" courts have historically rejected. Weber, 113 F.4th at 1096 (citation modified). At most, the declarants suspect election fraud based upon ballots that "were filled in with perfect precision" as if they were printed. Dkt. 5 at 47; see also id. at 43 ("I saw a lot of ballots that had squares filled in that looked like they had been printed – totally proper shape, perfectly even black coloring and no indentations of any kind that indicated a pen or any other kind of writing implement had been used."). But see id. at 40 ("I took a short moment to scrutinize these boxes and eventually found a stray mark or two . . . ."); id. at 38-39, 44-46 ("Groups of ballots . . . displaying visible ink bleed-through."). These declarations are not evidence of fraud, but even if they were, "[m]ere fraud or mistake will not render an election invalid" under the Due Process Clause. Bennett v. Yoshina, 140 F.3d 1218, 1226 (9th Cir. 1998).

Finally, Plaintiff's remaining arguments are either meritless or incomprehensible. For example, Plaintiff argues the existence of "a fundamental right to demand a manual cross-check" – but there is no such fundamental right, and the availability of a statutory right to a recount falls exclusively within the province of the States. Cf. Roudebush v. Hartke, 405 U.S. 15, 25 (1972) ("A recount is an integral part of the [state] electoral process and is within the ambit of the broad powers delegated to the States . . . ."). Plaintiff then claims California's voter-requested recounts are contingent on "every single vote cast statewide [being] fully recounted," which strips him of "procedural due process and fundamental constitutional rights" because he truly is concerned only with recounting ballots in Shasta County. App. at 6. However, Plaintiff simply misunderstands California's statutory framework, as the results of a recount are "null and void" only if the election is "not voted on statewide." Cal. Elec. Code § 15632 (emphasis added). Plaintiff clearly seeks a recount of the California primary election results for governor – a statewide office. See id. (defining "Governor" as a "voter-nominated office" voted for at a "state-conducted primary election"). Lastly, Plaintiff's other arguments concerning standing and document preservation have no bearing on whether Defendant impaired his right to vote. See App. 5-7.

Accordingly, because Plaintiff is not likely to succeed on the merits of his claims, the Court "need not consider the other factors." Uber Techs., Inc., 168 F.4th at 1219.

///

## V.
## CONCLUSION

For the reasons set forth above, Plaintiff's Application is **DENIED**.

**IT IS SO ORDERED**.

# EXHIBIT B

**RAJI RAB**
22736 Vanowen St. Suite 105
West Hills, CA 91307
(818) 793 9900
rajirab@gmail.com
**Plaintiff, Pro Se**

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**RAJI RAB,**

Plaintiff,

vs.

**SHIRLEY WEBER, in her official capacity as California Secretary of State,**

Defendant.

**CASE NO.: 2:26-cv-08040-KK-SK**

**~~[PROPOSED]~~ ORDER GRANTING PLAINTIFF RAJI RAB'S MOTION UNDER FEDERAL RULE OF APPELLATE PROCEDURE 4(a)(5)**

The Court has considered Plaintiff Raji Rab's Motion under Federal Rule of Appellate Procedure 4(a)(5) and 28 U.S.C. § 2107(c) for an extension of time to file a Notice of Appeal from the Court's August 18, 2026 Amended Order [Dkt. 14].

For good cause shown and upon a finding of excusable neglect under Rule 4(a)(5), the Motion is GRANTED.

Plaintiff's time to file a Notice of Appeal from the August 18, 2026 Amended Order [Dkt. 14] is extended through September 18, 2026.

**IT IS SO ORDERED.**

DATED this 25th day of September, 2026.

**HON. STEVE KIM**
UNITED STATES MAGISTRATE JUDGE

# EXHIBIT C

California Secretary of State
**Shirley N. Weber, Ph.D.**

Home Elections and Voter Information Upcoming Elections
General Election - November 3, 2026

# Key Dates and Deadlines

**Choose Language**

English

## General Election - November 3, 2026

| Description of Event | Deadline* |
| --- | --- |
| Supreme and Appellate Courts: Signatures-In-Lieu of Filing Fee Period | May 18 – July 16, 2026 |
| Last day for initiative and legislative measures to qualify to appear on the ballot | June 25, 2026 |
| Voter Information Guide: Proposition Ballot Title and Summary and Condensed Ballot Title and Summary Deadline | July 3, 2026 |
| Voter Information Guide: Proposition Argument Submission Deadline | July 7, 2026 |
| Voter Information Guide: Proposition Argument Selection and Exchange | July 12, 2026* |
| Voter Information Guide: Statewide Constitutional Office Candidate Statement and Supreme Court Justice Statement of Qualification Deadline | July 15, 2026 |
| Voter Information Guide: Proposition Analysis and Text Deadline | July 16, 2026 |
| Voter Information Guide: Rebuttal Argument and Summary Information Deadline | July 16, 2026 |

| | |
|---|---|
| Supreme and Appellate Courts: Declaration of Candidacy Period | July 17 – August 15*, 2026 |
| Voter Information Guide: Available for Public Display and Examination. | July 21 – August 10, 2026 |
| Change of Candidate's Ballot Designation - Deadline | July 28, 2026 |
| Randomized alphabet drawing for the order of the candidates on the ballot | August 13, 2026 |
| Notice to Candidates | August 22, 2026* |
| Certified List of Candidates for the November 3, 2026, General Election will be posted | August 27, 2026 |
| Voters can check their status at **My Voter Status** to confirm their mailing address and voting status. | August 27, 2026 |
| **Voter Information Guide**: Online Version Available | September 4, 2026 |
| Superintendent of Public Instruction: Statement of Write-In Candidacy and Nomination Paper Period | September 7 – October 20, 2026 |
| Last day for county elections officials to transmit ballots and balloting materials to absent military and overseas voters who have requested them by this date | September 19, 2026** |

| | |
|---|---|
| Secretary of State's will mail the Official Voter Information Guide during this period | September 24 – October 13, 2026 |
| County Election officials will mail the County Voter Information Guide during this period | September 24 – October 13, 2026 |
| No later than this date, county elections officials shall begin mailing each registered voter a vote-by-mail ballot | October 5, 2026 |
| **Early Voting** sites open | October 5, 2026 |
| By this date, all counties shall open ballot drop-off locations for vote-by-mail ballots. To find a location, please visit: **https://caearlyvoting.sos.ca.gov/** | October 5 - November 3, 2026 |
| Last day to **register to vote** for the general election. To check your voter registration status, visit **MyVoterStatus** | October 19, 2026 |
| **Same Day Registration** available. Voters can "conditionally" register and vote a provisional ballot during this time | October 20 - November 3, 2026 |
| Superintendent of Public Instruction: Certified List of Write-in Candidates | October 23, 2026 |
| **Voter's Choice Act** counties to open Vote Centers | October 24, 2026* |
| Election Day - Polls shall be open throughout the state from 7:00 a.m. to 8:00 p.m. | November 3, 2026 |

| | |
|---|---|
| Beginning at 8:00 p.m., county elections officials begin reporting election results; counties shall conduct the semifinal official canvass of votes and report totals to the Secretary of State at least every two hours until completed. | November 3, 2026 |
| Vote-By-Mail Ballots returned by mail, in order to be counted, must be postmarked on or before Election Day and received by your county elections office. | November 10, 2026 |
| Last day for county elections officials to certify election results | December 3, 2026 |
| County elections official shall send to the Secretary of State, in an electronic format, one complete copy of the general election returns. | December 4, 2026 |
| Statement of Vote certified by the Secretary of State | December 11, 2026 |
| Certificates of Election | December 11, 2026 |
| Last day for Secretary of State to release the official Supplement to the Statement of the Vote | April 10, 2027* |

*Date falls on a weekend or state holiday; it does not move forward to the next business day.

**Elections Code section 3114 and the federal MOVE Act require that ballots be sent to military and overseas voters no later than 45 days prior to an election. This E-45 deadline must be adhered to and does not move forward even though the date falls on a Saturday.